In re M & L BUSINESS MACHINE COMPANY, INC., Debtor.

Christine J. JOBIN, Trustee of the Estate of M & L Business Machine Co., Inc., Plaintiff/Appellee,

v.

John CERVENKA, Defendant/Appellant.

Civ.A.No. 94–K–381.
Bankruptcy No. 90–15491 CEM.
Adv.No. 92–2192 PAC.

United States District Court,
D. Colorado.

April 8, 1996.

Christine J. Jobin, Dana M. Arvin, The Jobin Law Firm, P.C., Denver, CO, for Plaintiff.

Craig A. Weinberg, Stevens, Littman & Biddison, LLC, Boulder, CO, for Defendant.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

In this bankruptcy appeal John Cervenka contests the bankruptcy court's February 4, 1994 Order on Motions and Cross–Motions for Summary Judgment ("Order"), 1994 WL 131097, granting summary judgment in favor of Christine J. Jobin, trustee of the bankruptcy estate of M & L Business Machine Co., Inc. ("Trustee").

Cervenka argues the bankruptcy court erred: (1) by entering summary judgment against him under 11 U.S.C. § 548(a)(2) where "reasonably equivalent value" was given; (2) in ruling on summary judgment that he lacked "good faith" under 11 U.S.C. § 548(c); (3) in granting summary judgment precluding him from using the "ordinary course of business or financial affairs" defense in 11 U.S.C. § 547(c)(2).

Jurisdiction to hear this appeal from a final judgment of the bankruptcy court exists under 28 U.S.C. § 158(a). I grant the appeal in part and deny in part.

### I. *Factual Background.*

In the 1970's M & L Business Machines Company, Inc. ("M & L") was incorporated under Colorado law by Messrs. Morgan and Ledvina and operated as a business and office machine repair business. Some time during the early 1980's, Robert Joseph, Dan-

iel Hatch, and David Parrish acquired the stock of M & L and gained control of M & L.

At all times relevant, Joseph, Hatch and Parrish were the officers, directors and controlling persons of M & L until December 18, 1990, when Christine J. Jobin was appointed as the Chapter 11 Trustee of M & L.

Early in 1987, Joseph, Hatch, Parrish and a Patrick Given leased office space for M & L at 1333 West 120th Avenue, Westminster, Colorado. M & L continued to occupy the premises at 350 Havana, Aurora, Colorado, where the business was operated and continued to be operated until March 1991 when the Trustee ceased all operations of M & L.

In about 1987, Joseph, Hatch, Given and Parrish began soliciting and taking in money from third parties who were referred to as private lenders or private investors in M & L ("Investors"). The Investors were promised high rates of return for the use of their money to enable M & L to buy large quantities of expensive computers and office equipment. They were told they would share in large profits upon the resale of the computers and office equipment. Some investors were paid usurious interest for the use of their money.

The computers and office equipment were, in fact, never purchased and did not exist. Joseph, Hatch, Parrish and Given were operating a Ponzi scheme. Earlier Investors' investments were repaid from later Investors' investments and not from legitimate business activities.

On October 1, 1990, M & L filed a voluntary bankruptcy petition. On February 2, 1991, the Trustee opened certain boxes alleged to have contained computers. The Trustee found no computers but only bricks and hardened foam. On February 4, 1991, the Trustee removed all the alleged inventory from the warehouse. In May 1991, the Trustee opened over 700 boxes, purportedly containing computers. She found they contained only bricks and dirt or hardened foam.

According to Cervenka's affidavit, filed as his Direct Testimony on January 4, 1993, he was introduced to the M & L investment opportunity by an acquaintance. Cervenka, a doctor of chiropractic, telephoned Joseph and asked him a number of questions about the nature of M & L's business, its track record and history. Joseph answered all of Cervenka's questions and told him Investors were given post-dated checks in exchange for their investment because no bank could give M & L the size of capital it needed. Joseph stated further that if any of the checks bounced, M & L could be liable for "triple damages" under Colorado law. Cervenka states he was informed that M & L was a successful business and understood it to be legitimate.

Cervenka made his first investment in M & L on April 19, 1990 by way of two personal checks for $100,000.00 and $30,000.00 respectively. In exchange, he received post-dated checks from M & L and two promissory notes personally guaranteed by Joseph. When the checks came due, typically, Cervenka would deposit them into his own account and write a new check to M & L to accomplish a rollover of his investment.

It is undisputed that the sum total of all of the checks Cervenka wrote to M & L was $665,300.00 and the total amount of all M & L checks which he cashed was $670,725.00.

Jayne MacPhee of Patten, MacPhee & Associates, the Court appointed experts in this matter, determined Cervenka's initial investments were to yield a return of 7% interest over fourteen days, i.e. approximately 15% per month or 180% per annum.

Cervenka's affidavit states at no time during his investments with M & L was he aware that it was a Ponzi scheme and that, had he known, he would not have invested in the company. Cervenka maintains the fact that he could cash his post-dated checks when they came due indicated to him that M & L was a legitimate and prosperous business, and he was at all times acting in good faith. According to Cervenka, he did not know of M & L's financial problems before or during his investment nor did he know whether M & L was insolvent when he cashed his post-dated checks.

## II. *Procedural Background.*

The Trustee commenced this action under 11 U.S.C. § 547(b) seeking to avoid transfers which were preferential, in the total amount

of $232,950.00, made within ninety days of, and on the day of, the filing of the bankruptcy petition. The Trustee sought to avoid these same transfers, or recover the value of same, plus others under her avoiding powers pursuant to 11 U.S.C. § 548(a)(1) and (2). The total amount sought to be recovered on her § 548 claims was $670,725.00. With respect to the last transfer in the series of transfers which was made, the Trustee asserted a claim under 11 U.S.C. § 549 in the amount of $68,000.00. To the extent any of these transfers was avoided, the Trustee sought to have the property which was transferred, or the value of same, delivered to her pursuant to 11 U.S.C. §§ 542 and 550.

On November 2, 1992, Cervenka answered the complaint and filed a counterclaim for attorney fees for what he termed a "frivolous and groundless" action.[1] The bankruptcy court set the matter for trial on January 14, 1993. Cervenka then requested and received an extension of time to file his motion for summary judgment. Shortly thereafter he moved to continue the trial.

On January 4, 1993, Cervenka filed a trial brief in anticipation of the upcoming trial together with his written direct testimony. On January 7, 1993, Cervenka filed a motion to withdraw the reference to the bankruptcy court and requested that all other adversary proceedings against M & L investors be stayed. On January 8, 1993, the bankruptcy judge denied the motion to withdraw reference stating that court did not have jurisdiction to enter an order on the motion which should have been filed with the United States District Court.

Also on January 8, 1993, the bankruptcy court entered an order on Cervenka's motion to continue the trial. The court ruled:

The Court has reviewed the file and its other pending adversaries filed by the Trustee wherein the defendant is represented by counsel for Mr. Cervenka. Those cases involve similar transactions and similar defenses. It appears that a resolution of the legal issues relating to ordinary course of business and new value

defenses to the preference claims under 11 U.S.C. § 547 would greatly simplify the disposition of the factual disputes in those cases. Similarly, it will be much easier to resolve the factual issues under the fraudulent conveyance causes of action upon a determination of whether the "restitution" claims will be allowed as an offset under Section 548. Thus, the parties should be provided with an opportunity to fully brief those issues which will be resolved by way of summary judgment and the trial should be continued.

(R. Doc. 24.)

The bankruptcy court noted Cervenka had filed a trial brief "which addresses those issues" but allowed him through January 25, 1993 to file a supplemental brief and any related motions. (*Id.*) Cervenka filed a supplement to his brief noting that the court had indicated it would treat his trial brief as a motion for summary judgment.

Cervenka complains on appeal that, rather than simply to respond to those legal issues identified in the bankruptcy court's January 8, 1993 order, i.e. the availability of the defenses in § 547(c)(2) and (4) and the "restitution defense" to the § 548 claims, the Trustee's response brief also affirmatively sought the entry of summary judgment on the merits of her case and that the bankruptcy court's summary judgment ruling went beyond the issues which the parties were ordered to address.

The Trustee replies her response to Cervenka's motion and her cross-motion for summary judgment made the relief she was seeking clear. Cervenka moved for and obtained permission to file a reply brief in which he had an opportunity to respond to the Trustee's cross-motion but failed to do so.

I agree with the Trustee that, if Cervenka was concerned that the Trustee's cross-motion for summary judgment exceeded the scope of the issues envisaged in the January 8, 1993 order or that the cross-motion was untimely, he could have raised these concerns before the court. His failure to respond to the cross-motion cannot prevent the

---

1. The bankruptcy judge, as part of the "Order on Motions and Cross–Motions for Summary Judgment," denied the Counterclaim finding that the Trustee's claims were "well-founded." Cervenka has not appealed this aspect of the ruling.

entry of judgment on the relief requested by the Trustee.

### III. *Standard of Review.*

■■■ In reviewing a bankruptcy court decision, one accepts the court's findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous. Fed.R.Bankr.P. 8013; *Sender v. Heggland Family Trust (In re Hedged–Investments, Assocs., Inc.),* 48 F.3d 470, 472 (10th Cir. 1995). Conclusions of law are reviewed *de novo. Id.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) made applicable to bankruptcy proceedings by Fed. R.Bankr.P. 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

■■■ An issue of material fact is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In a light that favors the nonmoving party, the court must make reasonable inferences from the factual record. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 528 (10th Cir.1994). The nonmoving party may avoid summary judgment by showing specific facts as to those elements for which the nonmoving party carries the burden of proof, that demonstrate a genuine issue for trial. *Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994). Such specific facts must go beyond the mere allegations and denials of the pleadings. *Liberty Lobby,* 477 U.S. at 247, 106 S.Ct. at 2509–10.

### IV. *Merits.*

A. *Reasonably Equivalent Value under 11 U.S.C. § 548(a)(2)(A).*

The Trustee's action asserted claims under § 548(a)(1) (second claim for relief) and § 548(a)(2) (third claim for relief). Cervenka has challenged the bankruptcy court's granting of summary judgment to the Trustee on the § 548(a)(2) claim on the grounds that he gave "reasonably equivalent value" in exchange for the payments he received from M & L. He has not challenged (apart from the issue of his defense under § 548(c)), the entry of summary judgment on § 548(a)(1).[2]

Cervenka argues the bankruptcy court erred by entering summary judgment against him under 11 U.S.C. § 548(a)(2) where "reasonably equivalent value" was given. The section provides in relevant part:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of filing of the petition, if the debtor voluntarily or involuntarily-
>
> .    .    .    .    .
>
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation. . . .

11 U.S.C. § 548(a)(2)(A).

"Value" is defined under § 548(d)(2)(A) as "property, or satisfaction or securing of a present or antecedent debt of the debtor." Although the term "antecedent debt" is not defined, the Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). "Claim" is defined as either a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or a right to an equitable remedy for breach of performance. *Id.* § 101(5).

In addressing the Trustee's third claim for relief under § 548(a)(2), the bankruptcy judge found "the uncontroverted affidavits submitted by the Trustee and her expert Jayne MacPhee establish that transfers of

---

**2.** Section 548(a)(1) allows the trustee to avoid a transfer incurred by the debtor within one year of the filing of the petition, if the debtor "made

such transfer . . . with the intent to defraud any entity to which the debtor was . . . indebted."

the debtor's property occurred within one year of the bankruptcy and that each element of Section 548(a)(2) was present subject to a 'reasonably equivalent value' defense." (Order at 5–6.)

The court then discussed Cervenka's § 548(c) defense to the § 548(a) claims. Section 548(c) provides:

Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c).

The bankruptcy court recognized that cases addressing the issue have held that a defrauded investor in a Ponzi scheme gives "value" to the debtor in the form of a dollar-for-dollar reduction in the investor's restitution claim against the Ponzi scheme.

[T]o the extent the debtors' payments to a defendant [investor] merely repaid his principal undertaking, the payments satisfied an antecedent "debt" of the debtors, and the debtors received "value" in exchange for the transfers. Moreover, to the extent a transfer merely repaid a defendant's undertaking, the debtor received not only a "reasonably equivalent value" but the exact same value—dollar for dollar. We therefore hold that such transfers are not avoidable under section 548(a)(2).

*In re Independent Clearing House Co.* 77 B.R. 843, 857 (D.Utah 1987); *see also Wyle v. Rider (In re United Energy Corp.),* 944 F.2d 589, 596 n. 7 (9th Cir.1991).

The bankruptcy court further noted a restitution claim is an equitable claim which may only be successfully raised if Cervenka acted in good faith. The court went on to find:

In the instant case, the payment of usurious interest coupled with the use of postdated checks, the circumstances under which investors were enlisted in the scheme, and the caliber of those involved

in peddling the investments, put Mr. Cervenka, a Doctor of Chiropractic, on notice of the fraud. That knowledge, actual or constructive is sufficient when measured by an objective standard to negate the claim that reasonably equivalent value was given in good faith.

(Order at 6–7) (footnote omitted).

Judge Clark noted: "Unlike the *McKay* case, this court does not find that the facts of this case require an evidentiary hearing to determine on an objective basis that Mr. Cervenka does not have a valid Section 548(c) defense to the Trustee's claim." (Order at 7 n. 10.) Based on this finding, the bankruptcy court concluded, as a matter of law, pursuant to § 548(a)(2), the Trustee was entitled to avoid all transfers made from May 4, 1990 through October 1, 1990.

The bankruptcy judge melded the issue of whether Cervenka had a claim for restitution, the amount of which would constitute "reasonably equivalent value" under § 548(a)(2)(A), with the issue of whether Cervenka could raise the § 548(c) defense that he could retain payments made to him by M & L because he had taken them "for value and in good faith."

In *Jobin v. McKay (In re M & L Business Machine Co., Inc.),* I commented on the Order in this case, a copy of which had been filed after the hearing of argument in that appeal:

Judge Clark did not distinguish between an objective good faith test under § 548(c) and a subjective test under § 548(a)(2)(A).... I disagree with the *Cervenka* court's approach in assuming, without any discussion nor reference to any authority, that the objective good faith requirement under § 548(c) is applicable to the determination of the claim for rescission and "reasonably equivalent value" under § 548(a)(2)(A).

164 B.R. 657, 667 (D.Colo.1994).

I retain the view that a distinction exists between the objective good faith test under § 548(c) and the subjective test for determining whether an investor has a claim for restitution in assessing whether a debtor received

"reasonably equivalent value" under § 548(a)(2)(A).

In her appeal brief, the Trustee places reliance on the following reasoning in *United Energy Corp.*:

> In recognizing these claims for rescission and restitution, we assume that the investors had no knowledge of the fraud the debtors were perpetrating. If investments were made with culpable knowledge, all subsequent payments made to such investors within one year of the debtors' bankruptcy would be avoidable under 548(a)(2), regardless of the amount invested, because the debtors would not have exchanged a reasonably equivalent value for the payments.

944 F.2d at 596 n. 7.

I find nothing in this quote to suggest that the court in *United Energy Corp.* intended the phrase "with culpable knowledge" to be interpreted objectively rather than subjectively. To the contrary, the unqualified words "no knowledge" in the preceding sentence imply no actual subjective knowledge.

The Trustee cites no authority which holds that payments from a Ponzi scheme to an investor up to the amount of his or her investment do not satisfy a "debt" (i.e. the investor's claim for restitution) dollar for dollar. To the contrary, courts have held each payment received by an investor from a Ponzi scheme reduces and/or partially satisfies that investor's claim against the Ponzi scheme for restitution. *See, e.g., United Energy,* 944 F.2d at 596 (defrauded investors in a Ponzi scheme "clearly had claims for rescission and restitution [against the debtor] which arose when they bought [the investment] regardless of whether their existed a contractual right to the return of the principal"); *McKay* 164 B.R. at 666–67; *Independent Clearing House,* 77 B.R. at 857; *Dicello v. Jenkins (In re Int'l Loan Network, Inc.),* 160 B.R. 1, 12 (Bankr.D.C.1993).

■ I find the bankruptcy judge erred in applying an objective test of culpable knowledge when she determined Cervenka was not entitled to a claim for restitution, the reduction of which constituted "reasonably equiva-

lent value" under § 548(a)(2)(A). A subjective test should have been applied.

■ Cervenka submits the only evidence before the court on the issue of his claim that he was subjectively acting in good faith was his direct testimony and the deposition transcript of the Trustee. Cervenka's direct testimony was that he was informed that M & L was a successful business and understood it to be a legitimate enterprise; that he had no knowledge before or during his investments with M & L that M & L was a Ponzi scheme; that had he known that M & L was not a legitimate business concern, he would have withdrawn, rather than reinvest his money; and that his ability to cash his post-dated checks from M & L when they came due indicated to him that M & L was a legitimate business.

The Trustee's deposition testimony reflected that she stipulated to the fact that investors, including Cervenka, were misled and that she had no knowledge that Cervenka had any actual knowledge before October 1, 1990 that M & L was a Ponzi scheme.

Cervenka argues, based on this uncontroverted evidence of his subjective good faith, the bankruptcy judge erred in concluding on summary judgment that he did not have a claim for restitution, the reduction of which constituted "reasonably equivalent value" under § 548(a)(2).

I find the evidence introduced by Cervenka in opposition to the Trustee's cross-motion for summary judgment shows a genuine issue of material fact as to whether Cervenka had subjective knowledge of the fraud perpetrated by M & L. Accordingly, I find the bankruptcy court erred in granting summary judgment to the Trustee on the third claim for relief under § 548(a)(2).

B. *Ruling on summary judgment that Cervenka lacked "good faith" under 11 U.S.C. § 548(c).*

Cervenka argues the bankruptcy court erred in determining, without holding an evidentiary hearing, that he lacked the objective "good faith" required under § 548(c) which

would allow him a defense to the Trustee's § 548 claims.[3]

The bankruptcy court found "the payment of usurious interest coupled with the use of post-dated checks, the circumstances under which investors were enlisted in the scheme, and the caliber of those involved in peddling the investments, put Mr. Cervenka, a Doctor of Chiropractic, on notice of the fraud." (Order at 6–7.) It concluded such knowledge, measured by an objective standard, negated Cervenka's defense under § 548(c) that he received transfers of money from M & L in good faith.

The bankruptcy court distinguished this case from *McKay,* stating it did not find "the facts of this case require an evidentiary hearing to determine on an objective basis that Mr. Cervenka does not have a valid Section 548(c) defense to the Trustee's claim." (*Id.* at 7 n. 10.)

In *McKay,* the bankruptcy court concluded, upon review of the evidence at trial and applying an objective test of good faith, McKay had not discharged his burden of establishing he had received the transfers in good faith. I found this conclusion was not clearly erroneous. *McKay,* 164 B.R. at 663.

■ Cervenka maintains there was no evidence before the bankruptcy court to support the findings on which it based its conclusion that, objectively, he lacked good faith. I disagree. Cervenka's direct testimony and that of Jayne MacPhee supported the factual findings of the bankruptcy court.

The direct testimony of Cervenka describes the circumstances of his investment, including that he was informed that no bank could give M & L the size of loans it needed, the payment of usurious interest rates and the use of post-dated checks. The bankruptcy court concluded these factors, coupled with the fact that Cervenka had satisfied the minimal educational requirements to qualify as a doctor of chiropractic, when measured by an objective standard, put Cervenka on

constructive notice of the fraud. In other words, the bankruptcy court found at the time of the transactions, Cervenka had knowledge sufficient to place him on inquiry as to the financial condition and legitimacy of M & L.

I find the bankruptcy judge was not clearly erroneous in concluding Cervenka had not discharged his burden under § 548(c) to show he had taken for value and in good faith, assessed on an objective standard. Accordingly, I uphold the court's finding that Cervenka was not entitled to a § 548(c) defense on the Trustee's claims under § 548.

### C. *Ordinary Course of Business Defense under 11 U.S.C. § 547(c)(2).*

■ Cervenka further challenges the bankruptcy court's summary judgment ruling that the "ordinary course of business or financial affairs" exception contained in the Bankruptcy Code 11 U.S.C. § 547(c)(2) does not apply to the facts of this case. Under that section, a trustee may not avoid an otherwise preferential transfer, to the extent that the transfer was:

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms....

11 U.S.C. § 547(c)(2). To retain a transfer under the ordinary course of business exception, a creditor must prove all three of the stated elements. *Fidelity Sav. & Inv. Co. v. New Hope Baptist,* 880 F.2d 1172, 1177 (10th Cir.1989).

In *Sender v. Heggland (In re Hedged–Investments, Assocs., Inc.),* 48 F.3d 470, 474–76 (10th Cir.1995), the court reviewed conflicting authority on the applicability of the ordinary course of business defense in the

---

**3.** I have held an objective standard is to be applied in determining whether a transferee receives a transfer in "good faith" under § 548(c). *Jobin v. McKay* 164 B.R. at 662. Cervenka asserts this aspect of my decision is incorrect and

that a subjective test applies. He notes the issue is currently on appeal to the Tenth Circuit and wishes to preserve the issue pending the Tenth Circuit's decision in *McKay.*

context of a Ponzi scheme. The Tenth Circuit held:

> The ordinary business terms of investment companies does [sic] not include payments of fraudulent "profits" to early investors that those investors did not earn, but are made possible only by the investments of later investors—the *sine qua non* of a Ponzi scheme. Thus the literal terms of § 547(c)(2)(C) preclude application of the ordinary course of business defense to transfers made to *investors* in the ordinary course of a Ponzi scheme.

48 F.3d at 476.

By contrast, the court concluded "none of the provisions of § 547(c)(2) preclude its application to transfers made to noninvestor-creditors [in a Ponzi scheme] in the ordinary course of business and according to ordinary business terms." *Id.* at 476.

It is undisputed that Cervenka was an investor, rather than a noninvestor-creditor in the M & L Ponzi scheme. Accordingly, I find no error in the bankruptcy court's conclusion that he could not avail himself of the ordinary course of business defense under § 547(c)(2).

### V. *Conclusion*

For the reasons stated above, I grant the appeal with respect to the bankruptcy court's entry of summary judgment in favor of the Trustee on her third claim for relief under § 548(a)(2)(A) and reverse the Order in this regard. I deny the rest of the appeal and affirm the Order in all other respects. Accordingly,

IT IS ORDERED THAT the Appeal is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED THAT the Bankruptcy Court's February 4, 1994 Order on Motions and Cross–Motions for Summary Judgment is REVERSED with respect to the entry of judgment on the third claim for relief and AFFIRMED in all other parts.