## In re M & L BUSINESS MACHINE COMPANY, INC., Debtor.

## Christine J. JOBIN, Trustee of the Estate of M & L Business Machine Co., Inc., Plaintiff/Appellee,

v.

## Henry RIPLEY, III a/k/a H. Ripley, Defendant/Appellant.

### Civil Action No. 94–K–2871.

United States District Court,
D. Colorado.

July 16, 1996.

---

Christine J. Jobin, The Jobin Law Firm, Denver, CO, for Plaintiff/Appellee.

Edwin G. Perlmutter, M. Frances Cetrulo, Berenbaum, Weinshienk & Eason, Denver, CO, for Defendant/Appellant.

## CORRECTED MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

In this bankruptcy appeal Henry Ripley, III a/k/a H. Ripley contests the November 22, 1994 Memorandum Opinion and Order following trial entered by Bankruptcy Judge Roland J. Brumbaugh ("Order") (R. Doc. 47). The Order granted judgment in favor of Christine J. Jobin, trustee of the bankruptcy estate of M & L Business Machine Co., Inc. ("Trustee"), under 11 U.S.C. § 547(b) in the sum of $53,000.00; under 11 U.S.C. § 548(a)(1) in the sum of $1,307,046.00; and under 11 U.S.C. § 548(a)(2) in the sum of $200,696.00. The Order provided since the sums awarded were duplicative, the Trustee was entitled to recover a maximum of $1,307,046, plus costs, plus interest at the statutory rate from and after the entry of judgment. The bankruptcy judge dismissed the Trustee's claims under 11 U.S.C. § 544 and Colo.Rev.Stat. § 38–10–117 (1982).

Ripley argues the bankruptcy court erred: (1) in holding that the date of delivery of Ripley's check to M & L Business Machine Co., Inc. ("M & L") rather than the date of honor determines when Ripley's new value was given under 11 U.S.C. § 547(c)(4); (2) in

precluding Ripley from using the ordinary course of business defense; (3) in holding Ripley liable for $1,307,046.00 in transfers under 11 U.S.C. § 548(a)(1) when he was merely an investor in M & L, had no knowledge of the frauds concocted by M & L, transferred $1,229,000.00 to M & L for which he was given no credit and was simply reinvesting his payments from M & L; (4) by not applying basic principles of fairness, equity and due process to limit the punitive result obtained by aggregating all of the Debtor's transfers to Ripley without permitting Ripley any offset; (5) in denying Ripley's recoupment and setoff defenses; and (6) in relying upon evidence from cases in which Ripley was not involved and by allowing the Trustee to ask numerous unsubstantiated hypothetical questions to refresh the court's memory of other cases.

Jurisdiction to hear this appeal from a final judgment of the bankruptcy court exists under 28 U.S.C. § 158(a).

After examining the briefs and appellate record, I conclude the decisional process would not be significantly aided by oral argument. I grant the appeal in part and deny in part.

## I. *Facts.*

In the 1970's M & L was incorporated under Colorado law by Messrs. Morgan and Ledvina and operated as a business and office machine repair business. Sometime during the early 1980's, Robert Joseph, Daniel Hatch, and David Parrish acquired the stock of M & L and gained control of it.

At all times relevant, Joseph, Hatch and Parrish were the officers, directors and controlling persons of M & L until December 18, 1990, when Christine J. Jobin was appointed as the Chapter 11 Trustee of M & L.

Early in 1987, Joseph, Hatch, Parrish and a Patrick Given leased office space for M & L at 1333 West 120th Avenue, Westminster,

Colorado. M & L continued to occupy the premises at 250 Havana, Aurora, Colorado, where the business was operated and continued to be operated until March 1991 when the Trustee ceased all its operations.

In about 1986, Joseph, Hatch, Given and Parrish began soliciting and taking in money from third parties who were referred to as private lenders or private investors in M & L ("Investors"). The Investors were promised high rates of return for the use of their money to enable M & L to buy large quantities of expensive computers and office equipment. The Investors were told they would share in large profits upon the resale of the computers and office equipment. Some Investors were paid interest for the use of their money.

The computers and office equipment were, in fact, never purchased and did not exist. Joseph, Hatch, Parrish and Given were operating a Ponzi scheme.[1] Earlier Investors' investments were repaid from later Investors' investments and not from legitimate business activities.

On October 1, 1990, M & L filed a voluntary bankruptcy petition. On February 2, 1991, the Trustee opened certain boxes alleged to have contained computers. She found no computers but only bricks and hardened foam. On February 4, 1991, the Trustee removed all the alleged inventory from the warehouse. In May 1991, the Trustee opened over 700 boxes, purportedly containing computers. She found they contained only bricks and dirt or hardened foam.

Henry Ripley is a graduate of the University of Denver, where he received a bachelor of Arts with a major in Math and Computer Science in 1975 and a Master of Business Administration in 1978. After graduating, he worked for Mountain Bell for three years in several departments, including its treasury and computer departments. He terminated

---

1. The Tenth circuit has defined a Ponzi scheme as

> an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors

are actually paid the promised returns, which attract additional investors.

*Jobin v. McKay (In re M & L Business Machine Co.) ("McKay II"),* 84 F.3d 1330, 1332 n. 1 (10th Cir.1996) (citing *Sender v. Heggland Family Trust (In re Hedged–Invs. Assocs., Inc.),* 48 F.3d 470, 471 n. 2 (10th Cir.1995)).

his employment with Mountain Bell in early 1983, began a computer consulting firm out of his home and invested on his own account.

In the fall of 1986, Ripley was introduced to the M & L investment opportunity by a friend who did not receive a commission for alerting Ripley to the opportunity. Ripley then met Parrish at his home. Parrish advised he was an owner of M & L which used foreign manufacturing plants to build computer systems which were then resold under major contracts in the United States or overseas for profit.

Ripley requested financial information and was provided with financial statements and tax returns to review at his meeting with Parrish. Ripley was advised M & L had been in business for several years and was a distributor for well-known manufacturers.

During his meeting with Parrish, Ripley decided to invest in M & L. On November 7, 1986, Ripley wrote checks totalling $50,000.00 to invest with M & L. During the four years in which he invested with M & L, Ripley entered approximately thirty-four different investment transactions with M & L for periods ranging from two years to six days for which he received and eventually deposited several post-dated checks.

It is undisputed that the sum total of all monies transferred by Ripley to M & L was $1,710,618.00 and the total amount of all monies he received from M & L was $1,894,346.00 plus post-dated checks totalling $1,616,000.00 which he held on the petition date.

## II. *Standard of Appellate Review.*

■ In reviewing a bankruptcy court decision, one accepts the court's findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous. Fed.R.Bankr.P. 8013; *Sender v. Heggland (In re Hedged–Investments, Assocs., Inc.)*, 48 F.3d 470, 472 (10th Cir.1995). Conclusions of law are reviewed *de novo. Id.*

## III. *Issues.*

A. *"New Value" under 11 U.S.C. § 547(c)(4).*

This issue concerns the last three transfers from Ripley to M & L ("Debtor") in the amounts of $35,000.00, $89,000.00, and $76,000.00 respectively. Under the Bankruptcy Code, a trustee may not avoid an otherwise preferential transfer "to the extent that, after such transfer, such creditor gave new value to ... the debtor...." 11 U.S.C. § 547(c)(4).

■ Ripley argues the three transfers in issue were made to the Debtor on September 19, 1990, rather than, as the bankruptcy judge found, on September 18, 1990. The significance of this is that on September 18, 1990, two preference payments totalling $31,400.00 were honored by the Debtor's bank. The "date of honor" rule applies to preferential transfers under § 547(b). *Barnhill v. Johnson,* 503 U.S. 393, 399–400, 112 S.Ct. 1386, 1390–91, 118 L.Ed.2d 39 (1992). If the transfers in issue from Ripley to the Debtor were made on September 18, 1990, they would not constitute "new value" under § 547(c)(4), whereas they would if made on September 19, 1990.

The bankruptcy judge found the parties had agreed in their Pretrial Statement that the advances were made to the Debtor on September 18, 1990 and that Ripley was bound by this stipulation. (Order at 11.) In the event, he found the evidence was uncontroverted that the three amounts were deposited in and credited to the bank account of the Debtor on September 18, 1990, that Ripley testified he delivered the three checks on September 18, 1990 and the check for $35,000 cleared the bank on that date. (*Id.* at 11–12.)

The bankruptcy judge rejected Ripley's contention that the advances of $89,000.00 and $76,000.00 were not made until September 19, 1996, the date on which they cleared his bank account. (*Id.* at 12.) The court found the "date of delivery" rather than the "date of honor" rule applied to transfers under § 547(c). It relied on a footnote in *Barnhill v. Johnson,* 503 U.S. at 402, n. 9, 112 S.Ct. at 1391, n. 9, citing among other cases, *Bernstein v. RJL Leasing (In re White River Corp.),* 799 F.2d 631 (10th Cir. 1986), which held the "date of delivery" rule applied to check payments for the purposes of § 547(c). Even if Ripley was not bound

by his stipulation in the Pretrial statement, the bankruptcy judge held, he was bound by the law of the circuit and the date of Ripley's three subsequent advances was September 18, 1990. (Order at 12.)

The bankruptcy judge concluded during the preference period Ripley received a total of $147,696.00 before September 18, 1990 and he subsequently advanced a total of $200,-000.00 on September 18, 1990 which effectively insulated the entire $147,000.00 but that he received an additional $53,000.00 in preference payments, entitling the Trustee to judgment under § 547(b) in the sum of $53,-000.00 unless some other defense applied. (Order at 13.)

On appeal, Ripley argues *White River* does not apply because it did not involve a subsequent new value defense, that the "date of honor," rather than the "date of delivery" rule applies, and that he is entitled to a "new value" defense in respect of his payments delivered to the Debtor on September 18, 1990 but not honored until September 19, 1990, thus reducing the preference claim from $53,000.00 to $21,600, the amount transferred to him on September 26, 1990. In other words, the three payments by Ripley which were honored on September 19, 1990 should be regarded as "new value" received by the Debtor after its payments on September 18, 1996 totalling $31,400, leaving the only remaining preferential transfer for which no new value was given as $21,600.00.

Ripley does not cite authority for his position that the "date of delivery" rule applied in *White River* to § 547(c)(2) transfers made in the "ordinary course of business" should not apply to § 547(c)(4) transfers. He states the decision in *White River*, was questioned in *Johnson v. Barnhill (In re Antweil)*, 931 F.2d 689, 692 (10th Cir.1991), *aff'd*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), the case from which *Barnhill v. Johnson* arose. However, in *Antweil*, the court found *White River* of no precedential value for purposes of § 547(b) (the preference provision) because *White River* dealt with the ordinary course of business exception under § 547(c)(2).

The court in *White River* adopted the First Circuit's analysis in *O'Neill v. Nestle*

*Libbys P.R., Inc.*, 729 F.2d 35, 37–38 (1st Cir.1984), "finding it supported by legislative history, policy considerations and pragmatic concerns." *White River*, 799 F.2d at 633. " '[P]ayment of a debt by means of a check is equivalent to a cash payment unless the check is dishonored. Payment is considered to be made when the check is delivered for the purposes of section 547(c)(1) and (2).' " *Id.* (quoting 124 Cong.Rec. H 11097 (daily ed. Sept. 28, 1978); 124 Cong.Rec. § 17414 (daily ed. Oct. 6, 1978)). " '[I]n the commercial world receipt of a check, as distinguished from the date it clears the drawee bank, is customarily looked upon as the date of payment of an obligation.' " *Id.* at 634 (quoting *Young Supply Co. v. McLouth Steel Corp.*, 55 B.R. 356, 357 (E.D.Mich.1985)).

I find no authority in support of Ripley's argument that the "date of delivery" rule enunciated in *White River* does not apply here because that case concerned a defense to a preference avoidance under § 547(c)(2) whereas here we are concerned with a defense under § 547(c)(4). To the contrary, the court in *Successor Committee of Creditors Holding Unsecured Claims v. Bergen Brunswig Drug Co. (In re Ladera Heights Community Hosp., Inc.)* adhered to the "date of delivery" rule "for the purposes of the new value and ordinary course defenses of Section 547(c)." 152 B.R. 964, 969 (Bankr. C.D.Cal.1993).

Accordingly, reviewing *de novo* the bankruptcy court's conclusion of law regarding when the three transfers in issue were made to the Debtor, I find the "date of delivery" rule applies and the transfers were made on September 18, 1996. I therefore affirm the bankruptcy court's conclusion that the Trustee was entitled to judgment under § 547(b) in the sum of $53,000.00 unless some other defense applied.

B. *"Ordinary course of business defense" under § 547(c)(2).*

Ripley next argues the bankruptcy court erred in precluding him from using the ordinary course of business defense under 11 U.S.C. § 547(c) to the Trustee's preference claim under § 547(b). In his brief, he takes

exception to the Tenth Circuit's ruling in *Sender v. Heggland Family Trust (In re Hedged–Invs. Assocs.)*, 48 F.3d 470, 476 (10th Cir.1995) disallowing the use of the defense by investors in a Ponzi scheme.

In *Jobin v. McKay (In re M & L Business Machine Co.) ("McKay II")*, 84 F.3d 1330, 1340 (10th Cir.1996), the appeals court followed the rule formulated in *Heggland*. There, as here, it was undisputed that the creditor was an investment, rather than a noninvestment, creditor. The Tenth Circuit found the bankruptcy court did not clearly err in concluding that payments from M & L to McKay were not made according to ordinary business terms under § 547(c)(2)(C) and this court properly rejected McKay's ordinary course of business defense.

■ In the subject case, I find no clear error in the bankruptcy court's finding of fact that payments to Ripley by M & L were not made in the "ordinary course of business." I conclude, following the law of this circuit that, as an investment creditor in the M & L Ponzi scheme, Ripley cannot avail himself of the § 547(c)(2) defense. I affirm the bankruptcy court in this regard.

### C. *Transfers under 11 U.S.C. § 548(a)(1).*

Ripley argues the bankruptcy court erred in holding him liable for $1,307,046.00 in transfers under 11 U.S.C. § 548(a)(1) when he was merely an investor in M & L, had no knowledge of the frauds concocted by M & L, transferred $1,229,000.00 to M & L for which he was given no credit, and was simply reinvesting his payments from M & L.

#### (1) *Actual Intent under 11 U.S.C. § 548(a)(1).*

Section 548(a)(1) allows the trustee to avoid a transfer incurred by the debtor within one year of the filing of the petition, if the debtor voluntarily or involuntarily "made such transfer ... with actual intent to hinder, delay or defraud any entity to which the debtor was, or became, on or after the date that such transfer was made ... indebted."

The bankruptcy court determined Ripley received from the Debtor a total of $1,307,-046.00 during the year pre-petition. Citing *Jobin v. Lalan (In re M & L Business Machine, Inc.)*, 160 B.R. 851 (D.Colo.1993), aff'd, 167 B.R. 219 (D.Colo.1994), the judge held, this being a Ponzi scheme, the only inference to be drawn was that the Debtor had the requisite actual intent to hinder, delay or defraud under § 548(a)(1). Accordingly, he concluded the Trustee had made a case under § 548(a)(1) and it was incumbent upon Ripley to prove any defenses he may assert. (Order at 13.)

On appeal, Ripley contends the automatic application of § 548(a)(1) to persons who had the misfortune of dealing with a Ponzi scheme is unfair and that nothing in the section provides for its automatic application to Ponzi schemes. He argues the court erred in imposing liability under § 548(a)(1) because there was no showing, and it made no finding, that the transfer was made with "actual intent" to hinder, delay or defraud.

I follow the holding in *Lalan* that, having determined the Debtor to be a Ponzi scheme, the only inference to be drawn was that it had the requisite actual intent to hinder, delay or defraud under § 548(a)(1). *Lalan*, 160 B.R. at 857. That court adopted the following reasoning in *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 860 (D.Utah 1987):

> To be fraudulent under section 548(a)(1), a transfer need not be made with the intent to hinder, delay or defraud the transferee. The trustee need only show that the transfers were made with the intent to hinder, delay or defraud "any entity to which the debtor was *or became* [indebted], or *after the date that such transfer occurred.*" 11 U.S.C. 548(a)(1) (emphasis added). Those persons who invest on the eve of a Ponzi scheme's collapse are entities to whom the debtor becomes indebted when they entrust their money to the debtors. Therefore, if at the time the debtors made transfers to earlier undertakers they had actual intent to hinder, delay or defraud later undertakers, transfers to earlier undertakers may be fraudulent within the meaning of section 548(a)(1).

One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them.

*Independent Clearing House,* 77 B.R. at 860 (further citations omitted).

■ Here, as in *Independent Clearing House,* the Trustee's "undisputed evidence is that the debtors were engaged in a Ponzi scheme and therefore must have known that undertakers at the end of the line would lose their money." *Id.* This evidence was sufficient to establish as a matter of law the Debtor's actual intent to hinder, delay or defraud creditors within the meaning of § 548(a)(1).

I therefore reject Ripley's contention that the Trustee did not carry her burden to establish the Debtor's "actual intent" under § 548(a)(1). Because I find Ripley failed to prove any defense to this claim, I affirm the bankruptcy court's award to the Trustee and against Ripley under § 548(a)(1) in the sum of $1,307,046.00.

(2) *"Reasonably Equivalent Value" under 11 U.S.C. § 548(a)(2)(A).*

Ripley argues the bankruptcy court erred by entering summary judgment against him under 11 U.S.C. § 548(a)(2) where "reasonably equivalent value" was given. The section provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of filing of the petition, if the debtor voluntarily or involuntarily—

. . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation . . . and

B(i) was insolvent on the date that such transfer was made or such obligation was incurred. . . .

11 U.S.C. § 548(a).

The bankruptcy judge found the Trustee had established transfers of an interest in property of the Debtor ($1,307,046.00) were made within one year before the filing of the petition and while the Debtor was insolvent. The remaining issue was whether the Trustee had established the Debtor received "less than a reasonably equivalent value in exchange." (Order at 14.)

"Value" is defined under § 548(d)(2)(A) as "property, or satisfaction or securing of a present or antecedent debt of the debtor. . . ." Although the term "antecedent debt" is not defined, the Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12).

Thus analysis of the Trustee's § 548(a)(2) claim requires a determination whether Ripley had a claim against the Debtor and, if so, whether the Debtor's payments to him reduced that claim, thus providing "reasonably equivalent value."

The bankruptcy court relied on the following statement in *Wyle v. Rider (In re United Energy Corp.),* 944 F.2d 589, 596 n. 7 (9th Cir.1991): "If investments were made with culpable knowledge, all subsequent payments made by such investors within one year of the debtors' bankruptcy would be avoidable under § 548(a)(2), regardless of the amount invested, because the debtors would not have exchanged a reasonably equivalent value for the payments." (Order at 14–15.)

The bankruptcy judge held the term "culpable knowledge" required "a subjective inquiry into the state of mind of the Defendant vs. an objective standard of what the Defen-

dant 'knew or should have known.'" (*Id.* at 15.) In making this determination, the court found the only relevant evidence was Ripley's statement that after the Debtor's check bounced around June 15, 1990, Joseph told him his check would not be "valid until they both *obtained another investor* to fill this contract and then also generated the necessary equipment and shipment and so forth to live up to their terms with the user." (*Id.*) (emphasis in Order).

On the basis of this statement, the court concluded Ripley had "'culpable knowledge' that the return of his investments and his profits were dependant [sic] on the receipt of funds from other future investors—the classic Ponzi scheme," and accordingly any transfers made after June 15, 1990 were made without "reasonably equivalent value" being given to the Debtor. (*Id.*) The bankruptcy judge found the Trustee had shown such transfers amounted to $200,696.00, her entitlement under § 548(a)(2) unless other defenses applied. (*Id.*)

Ripley challenges the determination that he had "culpable knowledge" precluding a claim which would amount to "reasonably equivalent value." He asserts it is inconsistent with the court's finding when it dismissed the Trustee's fraudulent conveyance claims under 11 U.S.C. § 544 and Colo.Rev. Stat. § 38–10–117 (1982), on the basis that the Trustee had failed to establish Ripley's subjective knowledge of the fraud. (*See* Order at 22.)

Ripley further challenges the court's interpretation of his statement as reflecting that he had "culpable knowledge." He maintains the statement merely reflects that an investor had to be found to replace another in order to fill the computer contract and purchase equipment for sale under the contract. He states the business operation contemplated by the investors was participating in computer sales and the revenues generated by the sales being returned to the investors.

Recently, the Tenth Circuit discussed the manner of determining whether a defendant to a trustee claim under § 548(a)(2) has a claim against the debtor and, if so, whether the debtor's payments to him reduced that claim, so providing "reasonably equivalent value" under § 548(a)(2)(A). *McKay II*, 84 F.3d at 1340–42. The appeals court held, in making these determinations, Colorado law applies. *Id.* at 1341 (citing *Landsing Diversified Properties–II v. First Nat'l Bank & Trust Co. (In re Western Real Estate Fund, Inc.),* 922 F.2d 592, 595 (10th Cir.1990), modified *sub nom., Abel v. West,* 932 F.2d 898 (1991)). The *McKay II* court also took into consideration the bankruptcy court's factual finding that, although McKay did not invest in M & L and receive payments in a good faith manner, as measured by an objective standard, he did not have actual knowledge of the fraudulent scheme.

In these circumstances, the Tenth Circuit found, Colorado law "allow[s] a party fraudulently induced to enter into a contract to recover the full amounts paid even when the defrauded party acted negligently and had inquiry notice of the fraud." *McKay II,* 84 F.3d at 1342. In light of the evidence indicating McKay was fraudulently induced to invest in M & L and the bankruptcy court's finding that he did not have actual knowledge of the fraud, the Tenth Circuit found he had a colorable claim to recover the amounts he invested in M & L. Accordingly, it affirmed the conclusion of the courts below that "M & L's payments to Mr. McKay reduced the amount of this restitution claim, that M & L thereby received reasonably equivalent value for its payments to him, and that the trustee was not entitled to avoid the transfers under § 548(a)(2)." *Id.* at 1342.

■ In the subject case, the bankruptcy judge found the only relevant evidence on Ripley's subjective state of mind was his statement that Joseph told him that his check would not be "valid until they both obtained another investor to fill this contract and then also generated the necessary equipment and shipment and so forth to live up to their terms with the user." (Order at 15.) Based on this statement, the court concluded Ripley had actual knowledge "that the return of his investments and his profits were dependant [sic] on the receipt of funds from other future investors—the classic Ponzi scheme." (*Id.*) This finding of fact shows a misunderstanding of what constitutes "the

classic Ponzi scheme." As such, I find it to be clearly erroneous.

The fact that an investor's returns on his or her investments in a business operation are dependent on future investors investing in the entity does not *per se* make the entity a Ponzi scheme. The key issue is whether the business operation is legitimate. If M & L had been, as it held itself out to be, participating in computer sales with the revenues generated by the sales being returned to the investors, it would not have been a Ponzi scheme. If that had been the case, those who invested could have legitimately expected returns on their investments based on the fact that other investors were investing in the same concern and thus facilitating its profitability. What rendered M & L a Ponzi scheme was the fact that it was not participating in computer sales but was paying "old investors" returns exclusively from new investors' investments in a fictitious business concern.

The bankruptcy judge explicitly stated Ripley's above-quoted statement was the sole evidence relevant to the inquiry as to whether Ripley subjectively knew that M & L was a Ponzi scheme. As discussed, the bankruptcy court's factual finding that his statement showed actual knowledge of the fraud being perpetrated was clear error.

Further, this finding of the bankruptcy judge contradicts his factual finding, in dismissing the Trustee's fraudulent conveyance claim under 11 U.S.C. § 544 and Colo.Rev. Stat. § 38–10–117 (1982), that "the evidence herein was insufficient to establish ... subjective knowledge [of the fraud] on the part of the Defendant." (Order at 22.)

I find the evidence in the record insufficient to establish Ripley's actual knowledge of a fraudulent scheme. Accordingly, I find he had a colorable restitution claim to recover the amounts he invested in the Debtor.[2] As such, the Debtor received reasonably equivalent value for its payments to Ripley to the extent of the total amount of his investments, amounting to $1,229,000.00.

The Debtor paid Ripley $1,307,046.00 during the one year preceding the bankruptcy petition. Because the Debtor received reasonably equivalent value in exchange for its payments to the extent of $1,229,000.00, the Trustee may only avoid the transfer to Ripley under § 548(a)(2)(A) to the extent of $78,046.00.

Accordingly, I reverse the order of the bankruptcy court that judgment enter in favor of the Trustee and against Ripley under 11 U.S.C. § 548(a)(2)(A) in the sum of $200,-696.00 and order judgment to be entered in favor of the Trustee and against Ripley under 11 U.S.C. § 548(a)(2)(A) in the sum of $78,046.00.[3]

(3) *Value and Good Faith Defense under 11 U.S.C. § 548(c).*

■ Ripley next argues the bankruptcy court erred in concluding he did not receive the transfers from the Debtor in good faith and in rejecting the § 548(c) defense to the Trustee's § 548 claims. Resolving this issue requires a determination of whether the facts satisfy the proper legal standard, a mixed question of law and fact. Because the question of good faith is primarily factual, I review the findings of the bankruptcy court for clear error. *See McKay II*, 84 F.3d at 1338.

Section 548(c) provides:

Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may

---

2. Ripley did not raise the defenses of rescission and restitution in his answer nor are they mentioned in the Joint Pretrial Statement.

3. This conclusion is of little practical benefit to Ripley. The fact that the Debtor received "reasonably equivalent value" to the extent of Ripley's investment, reduces the amount the Trustee can recover under § 548(a)(2)(A) by the amount invested. However, under § 548(a)(1), the Trust-

ee can still recover the full amount paid to Ripley within one year of the filing of the petition unless Ripley is able to establish a defense under § 548(c) that he took "for value and in good faith." Since I affirm the bankruptcy court's finding that Ripley did not take in good faith, as measured by an objective standard, § 548(c) does not apply and the Trustee can still recover the amount of $1,307,046.00 under § 548(a)(1).

retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c).

In assessing whether this defense applied, the bankruptcy court made no finding as to whether Ripley took "for value" because it determined that he did not receive transfers from the Debtor in "good faith."[4]

The bankruptcy court correctly concluded "good faith" under § 548(a), (c) is to be determined by an objective, rather than a subjective standard. *See McKay II*, 84 F.3d at 1338 (holding the test to be whether " 'the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and a diligent inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent' ") (quoting *Jobin v. McKay (In re M & L Business Machine Co.)* ("*McKay I*"), 164 B.R. 657, 661 (D.Colo.1994) (quoting *Hayes v. Palm Seedlings Partners—A (In re Agricultural Research & Technology Group, Inc.)*, 916 F.2d 528, 536 (9th Cir. 1990))).

■ Ripley asserts at no time was he placed on inquiry notice. In arguing that he received the transfers from the Debtor in good faith, he states the evidence showed, *inter alia*, the returns on his investments were not of such a size to place a reasonable investor on notice and that a reasonable investor exercising due diligence would not have discovered the Debtor's business was not a rapidly expanding wholesale business with legitimate records. Under § 548(c), Ripley bears the burden of establishing that he received the transfers in good faith. *See McKay II*, 84 F.3d at 1338.

The bankruptcy judge found Daniel Predovich, whom Ripley had called as an expert witness to show he received the transfers in good faith, to have been thoroughly impeached and disregarded his testimony *in*

*toto*. (Order at 16–18.) He outlined various factors supporting his conclusion of a lack of good faith, objectively speaking, including Ripley's education and experience as an investor; the circumstances of his initial introduction to and investment in the Debtor; the fact that each investment had to be made with two checks; the interest rate which ranged from eight to twelve percent for thirty-five days, to twelve percent per month to ten percent per week; the request that he hold his checks for days after the date on them; and the lack of written financial information or prospectuses of the type provided in relation to his other investments. (Order at 16–22.)

■ Upon review of the record and the bankruptcy court's detailed findings, I find no clear error in the determination that Ripley failed to establish a reasonably prudent investor in his position should not have known of the Debtor's fraudulent intent and impending insolvency. I therefore affirm the bankruptcy court's conclusion that Ripley was not entitled to the good faith defense under § 548(c).

### D. *Principles of Equity.*

The bankruptcy court rejected Ripley's argument that equity should protect him from the Trustee's claims. (Order at 24.) The judge followed the principle in *Jobin v. Youth Benefits Unlimited (In re M & L Business Machine Co.)* that "all of the victims of the fraudulent scheme should be treated equally and the 'equality is equity and thus the spirit of the bankruptcy law,' " 164 B.R. 148, 151 (D.Colo.1994) (quoting *Cunningham v. Brown*, 265 U.S. 1, 13, 44 S.Ct. 424, 427, 68 L.Ed. 873 (1924)), aff'd, 59 F.3d 1078 (10th Cir.1995). In *Cunningham*, one of the original Ponzi cases, the Court held the funds the debtor obtained by fraud were the property of the estate and the investors were mere creditors of the estate subject to the prefer-

---

4. As discussed above, cases addressing the issue have held that a defrauded investor in a Ponzi scheme gives "value" to the debtor in the form of a dollar-for-dollar reduction in the investor's restitution claim against the Ponzi scheme. *See McKay II*, 84 F.3d at 1341–42; *Wyle v. Rider (In re United Energy Corp.)*, 944 F.2d 589, 596 (9th Cir.1991); *Jobin v. Cervenka (In re M & L Business Machine Co., Inc.)*, 194 B.R. 496, 501 (D.Colo.1996); *In re Independent Clearing House Co.*, 77 B.R. 843, 857 (D.Utah 1987).

ence provisions of the Bankruptcy Act. 265 U.S. at 12, 44 S.Ct. at 426–27.

On appeal, Ripley asserts all creditors are not being dealt with equally because only those investors who happened to still transact business with the Ponzi scheme at the time of its collapse are subject to avoidance powers. He urges me to deny the trustee's claims on principles of equity following the approaches taken in *Johnson v. Studholme,* 619 F.Supp. 1347, 1349 (D.Colo.1985), *aff'd,* 833 F.2d 908 (10th Cir.1987) and *American Continental Corp. v. All Preference Defendants (In re American Continental Corp.),* 142 B.R. 894 (D.Ariz.1992).

*Johnson* concerned an action by an equity receiver to recover amounts paid to investors in excess of their contributions for distribution to the receivership estate's creditors and claimants. The receiver sought recovery under claims for relief based on theories of recovery of receivership assets, unjust enrichment, conversion and money had and received. *Johnson,* 619 F.Supp. at 1348. Judge Richard P. Matsch distinguished *Johnson* from cases resting upon substantive provisions of the Bankruptcy Code, noting the provisions of the Code were not available for use in a non-bankruptcy receivership. He commented: "The Bankruptcy Code is *sui generis.* Its specific provisions function within the context of an intricate legislative system of laws designed carefully to meet the policy objectives of Congress." *Id.* at 1349. The reasoning in *Johnson* is not persuasive in this case, one resting on the provisions of the Code of the type expressly distinguished by that court.

The court in *American Continental Corp.* merely held the ordinary course of business defense in § 547(c) was available to the investors in light of the course of dealing between the parties, and the fact that the indicators of unusual business practices were not readily apparent to the investors who invested through legitimate investment houses in stocks and bonds. The case does not support the assertion that 11 U.S.C. § 547 is not applicable to investors in a Ponzi scheme.

■ I find no authority to overcome the mandate of the Supreme Court in *Cunningham* that funds the Ponzi scheme debtor obtained by fraud are the property of the estate and the investors, as mere creditors of the estate, are subject to the preference provisions of the Bankruptcy Act. I therefore affirm the conclusion of the bankruptcy court that equity demands all creditors, including Ripley, be subject to the avoidance powers of the Trustee under the Bankruptcy Code.

### E. *Recoupment.*

■ The bankruptcy court correctly found, in order to be entitled to the defense of recoupment, the party asserting the defense must prove (1) he or she acted in good faith, and (2) his or her claims arise from the same transaction. *See Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155, 157 (10th Cir.1986).

■ On Ripley's own evidence, during the year preceding the bankruptcy, he entered about twenty transactions with the Debtor, each on different terms with differing interest rates. He testified when each investment was concluded he took his money out of the Debtor and considered other investment options before reinvesting. It cannot be said that Ripley's claims arose out of a single transaction. I therefore affirm the bankruptcy court's denial of the defense of recoupment.

### F. *Setoff under 11 U.S.C. § 553(a).*

Citing 11 U.S.C. § 553, the *B & L Oil* court noted "[s]etoff is allowed in only very narrow circumstances in bankruptcy." That section provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .

11 U.S.C. § 553(a).

Here, the bankruptcy court correctly noted this section merely preserves any state created right of setoff and that in Colorado, " '[a] setoff arises from a transaction extrinsic to

that out of which the primary claim arose, it rests upon a claim or demand based upon independent cause [sic] of action.' " (Order at 23–24) (quoting *Counts v. Guaranty Savings & Loan Ass'n (In re Counts)*, 54 B.R. 730, 733 (Bankr.D.Colo.1985)).

The bankruptcy court found the only claim of Ripley brought to its attention was approximately $1.6 million in unpaid post-dated checks which he held at the time of the bankruptcy. The judge found these checks were not extrinsic to the Trustee's claims of preference and fraudulent transfers and, because the checks were post-dated after the date of the bankruptcy, Ripley's claim had not matured before the date of the filing of the petition for bankruptcy as required by § 553(a). Moreover, the Trustee's preference claims only arose upon the filing of the petition. Thus, neither the Trustee's nor Ripley's claims arose "before the commencement of the case under this title" as required under § 553(a).

Ripley cites *In re Independent Clearing House*, 77 B.R. 843, 857 (D.Utah 1987) and *McKay I*, 164 B.R. at 667 in support of his assertion that from the time he entrusted his money to the Debtor, he had a claim against it for the return of his money. He maintains he is entitled to a setoff of this claim for the amount of $1,710,618.00 which he deposited with the Debtor over four years.

The portions of the opinions cited by Ripley do not address the defense of setoff, but rather the remedies of rescission, restitution and recoupment. Ripley did not raise the defenses of rescission and restitution in his answer nor are they mentioned in the Joint Pretrial Statement. Had they been raised, the defenses might have applied to 11 U.S.C. § 548(a)(2) but not as general defenses to the Trustee's claims under §§ 547 and 548(a)(1).

■ The defense of setoff is governed by § 553 which allows offset of a claim of a creditor against the debtor if that claim arose before the commencement of the case. I find no clear error in the bankruptcy court's determination that the only evidence before it of setoff was the $1.6 million in post-dated checks in Ripley's possession and that neither his claim on these checks nor the Trustee's preference claim arose before

the commencement of the case. Accordingly, I affirm the bankruptcy court's determination that Ripley was not entitled to the defense of setoff under § 553.

### G. Admissibility of Evidence.

■ Ripley asserts the bankruptcy court erred in relying upon evidence from cases in which he was not involved and by allowing the Trustee to present numerous unsubstantiated hypotheticals to expert witness Daniel Predovich which were outside the record. Ripley's counsel objected to use of hypotheticals based upon testimony in depositions, the transcripts of which were available to Ripley. The bankruptcy judge allowed the questioning, not to admit the deposition testimony as evidence of its truth but for impeachment purposes to show that, in forming his opinions, Predovich had not reviewed relevant information to which he had access in the course of his investigation. (Order at 18.) I find the bankruptcy judge did not abuse his discretion in allowing the use of the reference to the deposition testimony for the limited purpose of impeachment. *See Bryan v. John Bean Division of FMC Corp.*, 566 F.2d 541, 545 (5th Cir.1978).

### IV. Conclusion.

For the aforesaid reasons, I grant the appeal with respect to the bankruptcy court's entry of judgment in favor of the Trustee in the amount of $200,696.00 on her claim under § 548(a)(2)(A) and enter judgment on this claim in the amount of $78,046.00. I deny the rest of the appeal and affirm the judgment in all other respects. Accordingly,

IT IS ORDERED THAT the appeal is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED THAT the Bankruptcy Court's November 22, 1994 Memorandum Opinion and Order is REVERSED with respect to the entry of judgment under 11 U.S.C. § 548(a)(2)(A) in the sum of $200,696.00 and that judgment enter under 11 U.S.C. § 548(a)(2)(A) in the sum of $78,046.00;

IT IS FURTHER ORDERED THAT the Bankruptcy Court's November 22, 1994

Memorandum Opinion and Order is affirmed in all other parts.